```
 1    explained that the State, in light of discussions
 2    with the victim, would agree not to proceed with or
 3    pursue the mandatory habitual offender petition
 4    under 4214(b).  Having been advised of that and
 5    actually reading the statute to him, I am satisfied
 6    that he understands what he is facing, and despite
 7    that he has chosen to proceed to trial today.
 8              If there is anything that Mr. Bordley
 9    wants to add at this time, I request that he do so
10    to make sure at this stage of the proceedings that
11    the record is absolutely clear as to his desire to
12    proceed to trial without an attorney.
13              THE COURT:  Mr. Bordley, did you hear
14    everything Mr. O'Neill just said?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  And have you taken into
17    consideration the information that he provided to
18    you?
19              THE DEFENDANT:  Yes, sir.  I have talked
20    to Mr. Baumeister several times.  This case is a
21    year old, and I asked Mr. Baumeister, I wrote him
22    and he said I was never habitual.  I asked him
23    several times was I habitual.  He said, "No, you are
```

Jennie L. Washington
Official Court Reporter

B-1

1  not.  As far as I'm concerned, you are not an
2  habitual."  Right?
3          So I was down here Wednesday and
4  Ms. Weeks -- the whole time I was coming here,
5  Andrew Vella kept offering me a plea to the
6  habitual, which I had a burglary on my record that I
7  got cleared up.  When I came down here Wednesday,
8  she gave me a plea to a certain amount of time,
9  wasn't habitual or anything.  When I got down here
10  today, it changed up.  It was so fast, they didn't
11  give me no time to think.  They ready to go to
12  trial.  No thinking process.
13          My whole case has been messed up.  I
14  would like Mr. Baumeister to represent me if he's
15  going to represent me right.  I have no other choice
16  but to represent myself or go to trial.  The pleas
17  he's offering -- it is a domestic dispute.  I've
18  been in here a year already for it.
19          THE COURT:  Let me just make sure that I
20  understand that you understand.  My understanding
21  from the State is that if you were convicted of the
22  charges by the jury, that you would be subject to a
23  mandatory life term of imprisonment as an habitual

```
 1   neither was Mr. Vella.  We understood that the

 2   predicate offenses were a burglary and a delivery

 3   charge.  I had advised Mr. Vella I had obtained the

 4   records, or that Mr. Bordley had given those to me,

 5   and checked them out and found he pled guilty to a

 6   criminal trespass. ¥¥So it was my opinion at the time

 7   I was representing Mr. Bordley that he was not

 8   eligible for habitual offender treatment.

 9              The new charge, the 1980 charge, was

10   first brought to my attention this morning.  I have

11   not been representing Mr. Bordley since November, or

12   actually before that.  We had a colloquy with

13   Judge Ridgely a couple of months ago.  "Mr. Bordley

14   was brought into the courtroom and I was ordered to

15   provide copies of my entire file to Mr. Bordley,

16   which I did, at the Judge's instruction, and that

17   has been the end of my assistance to Mr. Bordley,

18   other than answering technical questions.

19              And I think it is, in fact, true to say

20   that Mr. Bordley is finding out today for the first

21   time that he has a 1980 charge which might be a

22   predicate offense for the habitual offender

23   conviction.  He was offered, again, the same plea
```

Jennie L. Washington
Official Court Reporter

1    offer that Mr. Vella originally offered.

2            However, today, there was a change in the

3    plea offer and the State agreed not to seek habitual

4    offender status, and he would be sentenced under the

5    normal provisions of the burglary first degree

6    statute, which would be a maximum of ten years, and

7    the sentence would be from 48 to 96 months under the

8    truth-in-sentencing.  And I believe the 48 months,

9    because of his prior record, is a minimum sentence

10   the Court can impose and he could get up to 96

11   months -- actually could get up to ten years.

12           He was offered that plea offer this

13   morning and, quite frankly, in my opinion, he should

14   have taken that.  But he is his own attorney, but it

15   seems to me to be quite appropriate.  Beyond that,

16   quite frankly, if Mr. Bordley is saying today that

17   he wants me to represent him, that would be all well

18   and good, but I have not prepared this case and I am

19   not prepared to go to trial today.

20           MR. O'NEILL:  If I might supplement what

21   Mr. Baumeister said to the Court, there is a letter

22   dated January 27, 1998, signed by Mr. Vella who was

23   the deputy attorney general in the Kent office at

Jennie L. Washington
Official Court Reporter

B-4

1   you could do that.  So are you saying that you

2   really don't want to go pro se, that you would

3   prefer to have him represent you?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Okay.

6       XXX MR. BAUMEISTER:  Your Honor, that is

7   fine, but that does present quite a dilemma to me,

8   because I had to let the Judge know this morning

9   that, as of this morning, I also represented the

10  victim.  The Judge disqualified me from representing

11  her, but I have not prepared this case, assuming

12  that Mr. Bordley, as has always been his wish, did

13  not want me to assist him, other than rendering

14  technical assistance.

15          XX I am not familiar enough with the case to

16  go to trial today.  I apologize for that, but I am

17  simply not ready to try this case without further

18  discovery and getting into the meat of the issue.

19          THE COURT:  Well, you are aware, are you

20  not, that when you are stand-by counsel, that really

21  at any particular point in time, if the defendant

22  asks you to resume representing him, that you would

23  do so?

Jennie L. Washington
Official Court Reporter

B-5

```
 1              MR. BAUMEISTER:  Well, Your Honor, there
 2    are some issues in this particular case that need to
 3    be examined.  I don't know whether Mr. Bordley did
 4    that in fact or not; and that would be a past
 5    criminal record of Miss Loper, who is the alleged
 6    victim here, who has been a public defender client
 7    on numerous occasions also, and also her mental
 8    status or history at the Delaware State Hospital
 9    with admissions.  And those records have not been
10    subpoenaed by me.  I don't know whether Mr. Bordley
11    subpoenaed those records or not, but I certainly did
12    not.
13              THE COURT:  Well, I note that the case
14    has apparently been pending since January of '98; is
15    that correct?
16              MR. BAUMEISTER:  Yes, sir.
17              THE COURT:  Does the State have any
18    comments on was apparently a request for
19    continuance?
20              MS. WEEKS-TAPPAN:  Yes, Your Honor.  The
21    State would oppose a request for a continuance.
22    Regarding the victim's records, Elizabeth Loper's,
23    the request for the criminal record, the State could
```

Jennie L. Washington
Official Court Reporter

B-6

```
1    provide that.  We have that here with us.  Also, we
2    are going to move for a motion in limine to preclude
3    the defendant from making any mention of Miss
4    Loper's pending charges in this Court.  They are not
5    related to this matter in any way.
6           Also, regarding Miss Loper's State
7    Hospital status or status as a mental patient, the
8    State was also going to move today -- or will move
9    today that the defendant be precluded from bringing
10   that up in trial as it is not relevant.
11          MR. BAUMEISTER:  Frankly, I do not know
12   what her record is whether a motion in limine is
13   appropriate or not.  Her mental status may go
14   greatly to the issue of credibility, and until I've
15   seen those records, I do not know.
16          MR. JONES:  Your Honor, if I may be heard
17   with respect to the first aspect of the State's
18   motion of limine.  I have been appointed just this
19   morning to represent Mrs. Loper in respect to the
20   criminal charges on which Mr. Baumeister was excused
21   as counsel so that he could be stand-by counsel for
22   Mr. Bordley.  I've advised her and discussed with
23   the prosecution that those charges are unrelated to
```

Jennie L. Washington
Official Court Reporter

```
 1    this case; that if Ms. Loper is asked questions
 2    about those charges, she intends to exercise her
 3    privilege against self-incrimination pursuant to the
 4    Fifth Amendment.
 5                 I'm not a party to this proceeding, Your
 6    Honor, so I can't take a position on whether or not
 7    questioning with regard to those unrelated pending
 8    charges is relevant or not to either impeachment or
 9    any issue in this case, but I need to inform the
10    Court, as her counsel as of now, that she'll not
11    answer any questions with respect to her pending
12    criminal charges pursuant to her rights under the
13    Fifth Amendment to the Constitution.
14                 THE COURT:  Okay.
15                 MR. BAUMEISTER:  Your Honor, it does
16    create a problem with the Office of the Public
17    Defender, because we have represented her in the
18    past, and up until this morning were representing
19    her on unrelated charges.  But I'm still concerned
20    about conflict situation here.
21                 As stand-by counsel, it seems different
22    than actually sitting in the seat, the driver's seat
23    for the defendant.  So I'm going to need to check
```

Jennie L. Washington
Official Court Reporter

B-8

```
 1            THE DEFENDANT:  Not this occurrence.  But
 2    it helps to establish the process of this case.  She
 3    tells me one thing but tells the cops another thing.
 4            THE COURT:  Well, I don't think there's
 5    anything I can do about that today, so I think the
 6    request for a continuance is denied.  Now, is there
 7    anything further you would like to say right now?
 8            THE DEFENDANT:  No, sir.
 9            THE COURT:  I would like to go over one
10    other matter with you.  I notice that you have the
11    prison clothing on.  If you have civilian clothes
12    with you, you can wear them.  I just want to let you
13    know that if you have civilian clothes with you, you
14    are welcome to wear them.
15            THE DEFENDANT:  I got my prison clothes
16    at the prison.  But when I came down here Wednesday,
17    Mr. Baumeister said it was for my trial, I was going
18    to get dressed this morning, but Mr. Baumeister was
19    not 100 percent sure, but he said my trial would
20    probably not get started because other people were
21    going to trial, and that's the reason I didn't wear
22    my clothes.  I wanted to change this morning, that's
23    the only time you can change.
```

Jennie L. Washington
Official Court Reporter

B-9

```
 1    are trying to offer me ten years for something I see
 2    other people get things for, I might as well go to
 3    trial.  That's the way I look at it.
 4             MR. BAUMEISTER:  Your Honor, according to
 5    this, I was just given a copy of the victim's
 6    print-out of her record.  She was admitted to the
 7    Delaware State Hospital as a mental patient on the
 8    14th day of April of this year.  I need to see, I
 9    want the State to provide me with the State Hospital
10    records.  I think I will make that application
11    orally.
12             If they have not been subpoenaed, I'm
13    demanding that the State provide them to me right
14    now, because she has one, two, three -- at least
15    three mandatory commitments to the Delaware State
16    Hospital as a mental patient on her criminal record,
17    and I think that does go to her credibility, Your
18    Honor.  So I want those records before I start
19    making my opening remarks today.
20             THE COURT:  Would the State care to
21    respond to that?
22             MS. WEEKS-TAPPAN:  Yes, Your Honor.  That
23    is privileged information and the State can review
```

Jennie L. Washington
Official Court Reporter

B-10

A-32

1   review a person's psychiatric records.

2              THE COURT:  I agree with that.

3              MR. O'NEILL:  I think what the proper

4   course is for the State to obtain the record, review

5   them and provide them to the Court to review in

6   camera; and for any purposes of appeal, the Court

7   can seal those records, if the Court believes

8   there's something to be turned over to the defense,

9   and seal them for the Supreme Court later down the

10  line.  But Mr. Baumeister, I don't think, can stand

11  up here and say he gets to review these records.  I

12  don't believe that's the proper course of dealing in

13  this area.

14             MR. BAUMEISTER:  Well, Your Honor, --

15             THE COURT:  I'm listening.

16             MR. BAUMEISTER:  -- the issue would be

17  her competence to testify in court.  I'm not sure

18  what to say about that, until those records, at

19  least, have been reviewed.  When I see on someone's

20  criminal record three commitments to the Delaware

21  State Hospital, there has to be an issue of

22  competence.  If she were a defendant -- and she is a

23  defendant in this Court, and our office has

Jennie L. Washington
Official Court Reporter

B-11

A-34

```
 1   hear from somebody who has been admitted to the
 2   State Hospital and use that to impeach her
 3   credibility.  People are admitted to the State
 4   Hospital for numerous reasons.
 5            There are people who are depressed and
 6   they need professional help.  Not everybody admitted
 7   to the State Hospital is a paranoid schizophrenic as
 8   Mr. Baumeister is suggesting.  So until that point
 9   in time, I think the defense should be barred from
10   mentioning anything about her be admitted to the
11   State Hospital.
12            The State will acquire those records,
13   review them and turn them over to the Court so the
14   Court can review them as well.  If there is
15   something that may constitute Brady material, of
16   course, in light of our duty, we will turn those
17   over to the defense.  But we will acquire the
18   records and turn them over to the Court.
19            THE COURT:  You can acquire them and
20   review them first, and we will go from there.  It is
21   quarter of 12:00.  We will come back at quarter to
22   1:00.  We will be in recess.
23                    *  *  *  *  *
```

Jennie L. Washington
Official Court Reporter

B-13

```
 1   real comfortable of reviewing the records myself,

 2   because of the doctor - patient confidentiality.

 3   The State would prefer to turn the records over to

 4   Your Honor for review of anything that may be

 5   discoverable in this case.

 6              MR. BAUMEISTER:  I'm also concerned,

 7   frankly, as you know, the Office of the Public

 8   Defender, particularly me, represented Elizabeth

 9   Loper on a new set of charges.  And if I may briefly

10   advise the Court on what I understand them to be

11   from the matter of public record which was the

12   affidavit of probable cause.  Ms. Loper apparently

13   armed herself with a knife, threatened a co-worker,

14   I believe at some place out here on 13 with a knife

15   because the co-worker was sitting on the washing

16   machine and she had some rather nasty things to say

17   to the co-worker.  Definitely a bizarre type of

18   event, I'd have to say.

19              There is some occasion, also, that

20   Ms. Loper has been on some anti-psychotic, or

21   psychotropic medications.  I'm not sure what they

22   might be, the records would reflect that.  Those

23   would be things that I would have, if I were
```

1   handling the case, would file a motion to have her

2   examined by a psychiatrist or psychologist to see

3   if, in fact, she was competent to testify.  And with

4   her record, probably request to see if she was

5   competent to be a defendant in her other criminal

6   case which is up and coming.

7        So those are some things that I think the

8   Court needs to look at very carefully, because I'm

9   concerned about -- there are no eyewitnesses in this

10  particular case.  There is a police officer who

11  arrived at the scene subsequently who apparently

12  observed what appeared to be a broken front door.

13  But the only evidence to indicate that Mr. Bordley

14  broke the front door and threatened Ms. Loper is

15  from Ms. Loper's own mouth.  And this rather lengthy

16  history of mental illness on her part -- or what

17  appears to be mental illness, I think there's some

18  grave concerns there.

19       I don't know what -- and again, I think

20  we were talking about making our opening remarks

21  this afternoon before the Court recessed for Judge

22  Terry's Memorial Service, but the problem is I'm not

23  sure, I think there's been a motion in limine, I was

1   trying to pay attention this morning, but I missed a
2   few things.
3               MS. WEEKS-TAPPAN:  Yes, Your Honor.
4               MR. BAUMEISTER:  Motion in limine to
5   preclude me from mentioning that in the opening
6   remarks.  But I think that's rather unfair because
7   they might be relevant and there may be some things
8   I want to say to the jury, to listen to her
9   testimony carefully because you will be hearing she
10  is a mental patient.
11              THE COURT:  Okay.  Well, what were the
12  two, again, the two motions in limine?
13              MS. WEEKS-TAPPAN:  Your Honor, the first
14  was regarding the victim's, Elizabeth Loper's,
15  pending charge in this court for the aggravated
16  menacing that Mr. Baumeister was just talking about.
17  The State would ask Your Honor to rule that the
18  defendant may make no references to these pending
19  charges as they are not relevant to this matter.
20              THE COURT:  Okay.
21              MS. WEEKS-TAPPAN:  The second motion was
22  in regard to Ms. Loper's status as a mental patient
23  or as a past mental patient at the Delaware State

B-16

1    these records are going to show.  They may turn out
2    to be completely irrelevant, or they may turn out to
3    have some relevancy; and depending on what decision
4    gets made, it may conceivably affect the way the
5    State presents an opening statement, as well as the
6    way the defense may present an opening statement.
7    It may affect the way the direct examination of the
8    witness is done, as well as the cross-examination of
9    the witness is done.
10              And so, I think that determination should
11   be made really before we begin.  So what this is
12   leading up to is I think we're actually going to
13   start our opening statement and testimony tomorrow
14   at 10 o'clock.  I think that's where we are.  I'm
15   reluctant to simply deny the request that these
16   records be reviewed, notwithstanding that they were
17   not correctly requested, if you will.
18              Now, I'm not inclined to continue the
19   case.  I'm certainly not going to continue it
20   because of the fact that Mr. Baumeister is now back
21   on the case.  I will review these records, but I am
22   not inclined to continue this case to line-up other
23   witnesses, et cetera.  I'm inclined to go forward,

Jennie L. Washington
Official Court Reporter

B-17

1    relevance now, prior --

2              MR. BAUMEISTER:  It's relevant, Your

3    Honor, to her credibility.

4              THE COURT:  Okay.  I will allow the

5    question to be asked and answered, as just stated.

6    Now, once that question has been asked and answered,

7    then where do you seek to go?

8              MR. BAUMEISTER:  Well, then I'm going to

9    go backwards and talk about the particular incidents

10   and other incidents involving these two people

11   within the last year.

12             THE COURT:  Okay.  Then we will handle

13   the matter in that fashion.  Now, looking ahead, as

14   to these letters that you have mentioned that

15   apparently Mrs. Loper, am I to understand, wrote to

16   Mr. Bordley --

17             MR. BAUMEISTER:  I will be showing

18   Ms. Loper letters she sent to Mr. Bordley after this

19   particular event.  I have provided copies of those

20   to the State, and I believe they have reviewed those

21   letters with Ms. Loper.

22             THE COURT:  These are letters, I take it,

23   which were written between April and July of 1998.

1              MR. BAUMEISTER:  That's correct, as far

2    as I know.

3              THE COURT:  Is the State going to be

4    objecting to questions about those letters?

5              MS. WEEKS-TAPPAN:  Your Honor, the State

6    would object to the relevance of any letters that

7    the victim may have written to the defendant,

8    because these letters occurred after the incident we

9    are talking about on January 19th, 1998.  These

10   letters, one is a money order and then there are

11   some cards in there, and they are from May.  I'm not

12   sure what the date on the last one is, but they look

13   like they are from May, 1998, and the State would

14   question the relevance of these.  There is no

15   information in here of no recanting or anything that

16   would be relevant to this trial.

17             THE COURT:  I'm going to want to review

18   those letters before we get on to them.  Should I

19   review them now?

20             MR. BAUMEISTER:  Your Honor, I have

21   provided the State with a copy.  I have one copy

22   myself and the originals.  And quite frankly, I

23   think they are quite relevant to what she testified

Jennie L. Washington
Official Court Reporter

B-19

```
 1              THE COURT:  Yes.

 2              THE WITNESS:  I didn't write no letters

 3    while I was up at the State Hospital.

 4              MS. WEEKS-TAPPAN:  The letters we are

 5    talking about are the ones that we found out --

 6              THE WITNESS:  Oh, okay.

 7              MR. BAUMEISTER:  Cards.  They are cards,

 8    Your Honor.

 9              MR. BAUMEISTER:  One's a money order and

10    the others are cards.

11              THE COURT:  Are you Libby?

12              THE WITNESS:  Yes.

13              THE COURT:  What is the relevance of

14    these?

15              MR. BAUMEISTER:  Your Honor, they go

16    directly to her perceived, I assume, state of mind

17    on January 19th.  If, in fact, she was that afraid

18    that this man was going to kill her, then why does

19    she write these letters subsequently and tell him --

20    one of them says, "To my first love, you will be

21    getting out pretty soon.  I'm smoking these nasty

22    ass cobs --" whatever that means "-- for you and

23    me."  I'm not exactly sure what she means by that,
```

Jennie L. Washington
Official Court Reporter

B-20

1    and I want to ask her about it.  It seems to go to

2    the truthfulness of what she was saying back on

3    January 19th.

4           THE COURT:  Well, it would appear to me

5    that any relevance of these letters -- these are

6    April and May -- it would appear to me that any

7    relevance of these letters is marginal, at most.  It

8    would appear to me that they are just not

9    sufficiently relevant to be admitted, and any

10    possible relevance is offset under Rule 403.  I'm

11    going to rule them inadmissible under Rule 403.

12           MR. BAUMEISTER:  Your Honor, they go to

13    her credibility.  I mean, if you particularly take a

14    look at the one that says.  "To my first love, you

15    will be getting out pretty soon.  I am smoking these

16    nasty ass cobs for you and me," that goes directly

17    to her credibility, Your Honor.  And again, there is

18    no prejudice to her.  She's not a defendant in this

19    case.  She's merely a witness.

20           THE COURT:  I do not see anything in

21    those letters that has any bearing on her

22    credibility to recount the events of January, 1998.

23           THE WITNESS:  I thought I was the victim

Jennie L. Washington
Official Court Reporter

1    here?

2                   THE COURT:  Well, I'm making evidentiary

3    rulings, Mrs. Loper.  So you just bear with us here.

4    I rule them inadmissible under Rule 403.

5                   MR. BAUMEISTER:  I take strong exception

6    to the Court's ruling.

7                   THE COURT:  Understood.  Understood.  Are

8    we ready to proceed?

9                   MS. WEEKS-TAPPAN:  Yes, Your Honor.

10                  THE COURT:  I don't know if Ms. Loper

11   needs a moment to compose herself.

12                  THE WITNESS:  I'm all right.  I'm just

13   tired of this whole thing.  Can we get it over

14   today?

15                  THE COURT:  Pardon me?

16                  THE WITNESS:  Can we get all this done by

17   today?

18                  THE COURT:  Well, your testimony is

19   certainly going to be done today.  From what I heard

20   so far, it appears to me that the testimony will all

21   be completed today.

22                  THE WITNESS:  Thank you.

23                       *   *   *   *   *

Jennie L. Washington
Official Court Reporter

B-22

```
 1    of this.  I'm not sure if you have ever seen this,

 2    but if you could briefly look at it and tell us what

 3    your understanding of that is?

 4         A.    Yes, I've seen it before.  He's not

 5    supposed to have no contact with me whatsoever.

 6         Q.    And by "him," you mean who?

 7         A.    Gregory Bordley.

 8               MS. WEEKS-TAPPAN:  Your Honor, the State

 9    moves to have this admitted into evidence.

10               MR. BAUMEISTER:  I do not object, Your

11    Honor.

12               THE COURT:  It's admitted.

13    BY MS. WEEKS-TAPPAN:

14         Q.    Going back to January 19th, you stated

15    you received a phone call and you told Mr. Bordley

16    not to come over because of this no-contact order

17    that was in place.  What did the defendant say to

18    you when you told him not to come over?

19         A.    He said, "Fuck the cops."

20         Q.    And did he say anything else after that?

21         A.    No.

22         Q.    And did the defendant, in fact, come over

23    to your place that evening?
```

Jennie L. Washington
Official Court Reporter

B-23

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

     Jury ❑       Judge only ❑

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

     Yes ❑   No ❑

8. Did you appeal from the judgment of conviction?

     Yes ❑   No ❑

9. If you did appeal, answer the following:

(a) Name of court: _____

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?   Yes ❑   No ❑

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

_____

(4) Date of result (if you know): _____

(5) Citation to the case (if you know): _____

(6) Grounds raised: _____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes ❑   No ❑

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions,

applications, or motions concerning this judgment of conviction in any state court?

Yes ❑  No ❑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or

motion?        Yes ❑   No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❏    No ❏

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ❏ No ❏

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    Yes ❏    No ❏

(2) Second petition:    Yes ❏    No ❏

(3) Third petition:    Yes ❏    No ❏

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

GROUND ONE: _____
_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
_____
_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____
_____
_____
_____

(c) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____
_____
_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?       Yes ❑   No ❑

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion or petition?

    Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

GROUND TWO: _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ❑   No ❑

   (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

   _____

   _____

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
   state trial court?

   Yes ❑   No ❑

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (3) Did you receive a hearing on your motion or petition?

   Yes ❑   No ❑

   (4) Did you appeal from the denial of your motion or petition?

   Yes ❑   No ❑

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❑   No ❑

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative

remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ❑

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?        Yes ❏   No ❏

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ❏   No ❏

(4) Did you appeal from the denial of your motion or petition?

Yes ❏   No ❏

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏   No ❏

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

GROUND FOUR: _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑   No ❑

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?          Yes ❑ No ❑

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion or petition?

Yes ❑   No ❑

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑  No ❑

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?      Yes ❑   No ❑

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: _____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?      Yes ❑   No ❑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     Yes ❑     No ❑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _____

_____

(d) At sentencing: _____

_____

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ❑     No ❑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ❑   No ❑

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

   (1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(continued...)

Page 15

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

_____

Signature of Petitioner

_____

*(...continued)
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is
not signing this petition.

IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

* * * * *

## Certificate of Service

I, _Gregory A. Bordley_, hereby certify that I have served a true and correct cop(ies) of the attached: _Writ Of Habeas Corpus and Memorandum Of Law_ upon the following parties/person (s):

TO: _District Court Clerk_
_U.S. District Court_
_844 N. King St._
_Lockbox 18_
_Wilm. Delaware  19801_

TO: _District Attorney's Office_
_Dept Of Justice_
_820 N. French St._
_Wilm. Delaware 19801_
_____

TO: _____
_____
_____
_____
_____

TO: _____
_____
_____
_____
_____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE  19977.

On this _17_ day of _May_____, 200_5_

_____



U.S. POSTAGE
3.95

District Court Clerk
U.S. District Court
844 N. King Street
Lockbox 18 Wilmington, Delaware
19801

I/M Gregory A. Boedley
SBI# 00155219   Unit D-West
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



U.S.M.S.
X-RAY